IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROGER VIET,

    Petitioner,

    v.

M. MARTEL, Warden,

    Respondent.

_____/

No. C 09-4175 TEH (PR)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

Pro se Petitioner Roger Viet seeks a writ of habeas corpus under 28 U.S.C. § 2254, which, for the reasons that follow, the Court denies.

I

In May 2007, Petitioner was sentenced to twenty-three years to life in state prison following his convictions for various sex crimes committed against his minor daughter. Doc. #6, Ex. A at 720. On March 23, 2009, the California Court of Appeal affirmed the judgment. Doc. #6, Ex. G at 1. On July 8, 2009, the California Supreme Court denied his Petition for Review. Doc. #6, Ex. I.

On September 9, 2009, Petitioner filed the instant federal Petition for a Writ of Habeas Corpus. Doc. #1. On October 1, 2009, the Court found that the Petition stated cognizable claims for relief and ordered Respondent to show cause why a writ of habeas corpus should not be granted. Doc. #2. Respondent has filed an Answer and Petitioner has filed a Traverse. Doc. ## 6 & 12.

## II

The California Court of Appeal provided the following procedural background of the case as follows:

> A jury convicted [Petitioner] of aggravated sexual assault on a child less than 14 years old and at least ten years younger than him. (Pen. Code, former § 269; Stats. 1994, 1st Ex. Sess. 1993–1994, ch. 48, § 1, p. 8761.) The underlying crime that formed the basis for the conviction under former section 269 was unlawful oral copulation. (§ 288a.) The jury also convicted [Petitioner] on two counts of lewd or lascivious acts on a child under 14, based, as charged in the information, on one incident that occurred in Santa Clara County and another in Los Angeles County. (§ 288, subd. (a).) [Petitioner] was acquitted on other charged counts. The trial court sentenced him to life in prison with a 23-year minimum term.

Doc. #6, Ex. G at 1–2, footnote omitted. The court then summarized the factual background of the case as follows:

> I. Prosecution Case
>
> In 1999, [Petitioner's] daughter was 12 years old. The prosecution presented evidence of three sexual molestation events that took place that year. The jury convicted [Petitioner] of one count for each of the three incidents.
>
> A. The Garage Incident
>
> [Petitioner's] 12-year-old daughter was a competitive table tennis player. She would practice in the family's garage. [Petitioner]

2

entered the garage and inserted a finger inside her pants. He rubbed his finger on or near her external genitalia and used it to enter her vagina. This, the jury found, constituted lewd or lascivious conduct on a child under 14 (§ 288, subd. (a)).

**B. The Van Incident**

Later in 1999 [Petitioner's] daughter went to Santa Monica so that she could participate in a table tennis tournament. [Petitioner] and his daughter were in the family's van. [Petitioner] pulled down her pants and licked her external genitalia. This too, the jury found, constituted lewd or lascivious conduct on a child under 14 (§ 288, subd. (a)).

**C. The Bedroom Incident**

Still later in 1999 [Petitioner] directed his daughter to go with him to the parents' bedroom. [Petitioner's] daughter told Sunnyvale police, in a statement that the jury received as evidence, "I remember he had me march – , like, walk side-by-side with him" to the bedroom. "I don't know why, like, really, step by step." She confirmed that he escorted her in this manner in her testimony, telling the jury "I guess," which she explained in later testimony was her way of saying "yes," that he had her walk alongside him. Once in the bedroom, she described in her statement to the Sunnyvale police, "he made me take off my pants." Then [Petitioner] "had me lie down on his bed, like on the edge." There, as relevant to [Petitioner's] convictions, he performed oral copulation on her. The daughter told police "I think I was probably scared" when this was occurring; "I guess [I] kind of felt trapped, 'cause it was my father." Immediately after this encounter ended "he told me that it was supposed to be our secret, and not to tell Mom." During this account, [Petitioner's] daughter stated on occasion that her memory of events was imperfect.

As relevant to the nonconsensual nature of this incident, which was an essential element of former [Penal Code] section 269, [Petitioner's] daughter testified that her father was the authority figure in the household. Her boyfriend provided confirming testimony on this point. Also, she told Sunnyvale police, in a statement that the jury received as evidence,

3

that "you don't wanna, like, mess with him, so you just stay low on the radar."

...

**D. Phone Call from Daughter to [Petitioner]; Statement to Police**

The police arranged for [Petitioner's] daughter to confront him in a phone call. Responding to her accusations, [Petitioner] said that he was aroused by her in 1999 and blamed her for arousing him. He did not explicitly acknowledge committing any particular act, but the transcript suggests that he admitted engaging in oral copulation with her and penetration with a foreign object, namely his finger. The jury heard a recording of the phone call.

The police interviewed [Petitioner], recording the interview. He denied committing the acts for which he was later tried and stated that his daughter was trying to frame him. But he admitted being sexually aroused by his daughter in 1999, that he may have touched her in a sexual manner, and that he had violated the law "to some extent," though he retracted the latter opinion later in the interview. He blamed his daughter for arousing him, referring to "the way she behaved, and the way she dressed," and saying in broken English, "I think that she have probably behaved uh, correctly, then nothing would happen." He also said that his daughter was rebellious and that they had fought for a long time; he had even tried to force her to leave the house.

...

**II. Defense Case**

[Petitioner] testified on his own behalf and denied committing any charged or uncharged molesting acts. He confirmed his statement to police that his daughter was rebellious and sometimes dishonest, and when she was 16 he threatened to force her to leave the house. [Petitioner] reacted to his daughter's phone call with bafflement, wondering whether she had an Electra complex – a daughter's libidinal desire for her father – or was having an episode of sexual paranoia. In speaking with police, he meant to say that he did not have sexual thoughts about his daughter during interactions with her that were in question, because he never

4

> did have any such thoughts, and his daughter never sexually aroused him at age 12. The recorded interview did not accurately convey his intentions in answering certain questions during the interrogation. And his answers to police were the product of his bilingualism – he would hear a question in English, think about it in Vietnamese, and then render his spoken answer in English – and his training as an engineer, which led him to voice hypothetical possibilities in order to think logically when questioned about them.

Doc. #6, Ex. G at 2-5.

### III

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus on any claim adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal

principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

In four decisions this term alone, the United States Supreme Court reaffirmed the heightened level of deference a federal habeas court must give to state court decisions. See Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Premo v. Moore, 131 S. Ct. 733, 739-40 (2011); Felkner v. Jackson, 131 S. Ct. 1305, 1307-08 (2011) (per curiam); Cullen v. Pinholster, 131 S. Ct. 1388, 1398-1400 (2011). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Felkner, 131 S. Ct. at 1307 (citation omitted).

## IV

Petitioner seeks habeas relief under 28 U.S.C. § 2254 based on three claims: (1) Petitioner was denied due process as a result of the trial court's failure to instruct the jury on all elements of the charge in count one; (2) the trial court erred in failing to instruct the jury on the lesser-included offense to count one; and (3) Petitioner's due process rights were violated because there was insufficient evidence to support his conviction.

### A

Petitioner first claims that he was denied his right to due process because the trial court failed to instruct the jury on all elements of California Penal Code section 269, the charge in count one. Specifically, Petitioner contends the court did not

6

instruct the jury that the act upon which the charge was based had to have been performed "against the victim's will."

Petitioner was tried in 2007 for charged sexual acts against his minor daughter that included two incidents of oral copulation committed in 1999. Petitioner was charged in count one with aggravated sexual assault of a child (Cal. Pen. Code § 269), predicated on an underlying crime of unlawful oral copulation (Cal. Pen. Code § 288a).

At the time the acts were committed, California Penal Code section 269 stated, in relevant part:

> (a) Any person who commits any of the following acts upon a child who is under 14 years of age and 10 or more years younger than the person is guilty of aggravated sexual assault of a child:
>
> . . .
>
> (4) Oral copulation, in violation of Section 288a, when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.
>
> . . .
>
> (b) Any person who violates this section is guilty of a felony and shall be punished by imprisonment in the state prison for 15 years to life.

Cal. Pen. Code § 269 (West 1998). Oral copulation is defined under California law as "the act of copulating the mouth of one person with the sexual organ or anus of another person." Cal. Pen. Code § 288a. This definition applied in 1999.

With regard to the sexual assault charge under Penal Code section 269, the trial court orally instructed the jury as follows:

> [Petitioner] is charged in Count 1 with aggravated sexual assault, oral copulation of a

7

> child who was under the age of 14 years and at least ten years younger than [Petitioner].
>
> To prove [Petitioner] is guilty of this crime, the People must prove that, one, [Petitioner] committed an act of oral copulation with someone else; two, when [Petitioner] acted, the other person was under the age of 14 years and was at least ten years younger than [Petitioner]; and three, [Petitioner] accomplished the act by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to anyone.
>
> Oral copulation is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person.
>
> Penetration is not required.
>
> Consent is not a defense when the alleged victim is a child.
>
> An act is accomplished by force if a person uses enough physical force to overcome the other person's will.
>
> Duress means a direct or implied threat of force, violence, danger, hardship, or retribution that causes a reasonable person to do or submit to something that he or she would not otherwise do or submit to.
>
> When deciding whether the act was accomplished by duress, consider all the circumstances including the age of the other person and her relationship to [Petitioner].
>
> Menace means a threat, statement, or other act showing an intent to injure someone.
>
> An act is accomplished by fear if the other person is actually and reasonably afraid or she is actually and reasonably afraid and the defendant knows of her fear and takes advantage of it.

Doc. #6, Ex. B at 1852-53. The jury was provided with these instructions in written form. See Doc. #6, Ex. A at 618-19.

In addressing Petitioner's claim that the jury was not instructed on all elements of the offense, the appellate court found no due process violation, stating:

8

> [Petitioner] notes that the trial court's instruction omits the "against the victim's will" clause found in the current version of section 269 by reference to section 288a, subdivision (c)(2).  But he offers no reason that the current version of section 269, rather than that in effect in 1999, should apply to him.  Rather, it does not, at least to the extent it might lessen or ameliorate any punitive effect of the prior version of section 269.  [Citations.] And there is no material difference between the prior and current versions of section 269 in any event.  Section 288a, subdivision (c)(2), to which the current version of section 269 refers, provides that force, violence, duress, menace, or fear are the means by which a victim's will is overcome.  If force, violence, duress, menace, or fear is present, then the victim's will is overcome as far as section 288a is concerned.  The instruction told the jury it must find that [Petitioner] accomplished the oral copulation by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury."  The jurors found that one of these circumstances applied and therefore necessarily found, as required under the law applying to [Petitioner's] 1999 offense, and also under current law if that applied (which it does not), that his act was against his daughter's will.

Doc. #6, Ex. G at 8-9.  The appellate court further found that "[t]he instruction restated the law accurately," Doc. #6, Ex. G at 7, a determination that is binding on this court, see <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (per curiam) (state court's interpretation of state law binds a federal court sitting in habeas corpus); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (same), and is one to which this Court must defer under AEDPA.  <u>Felkner</u>, 131 S. Ct. at 1307-08. Petitioner therefore is not entitled to relief on this claim.

//

**B**

Petitioner next claims that the trial court denied his right to due process when it refused his request to instruct the jury on nonforcible oral copulation of a minor child (Cal. Pen. Code § 288a(c)(1)) as a lesser-included offense of the aggravated sexual assault charged in count one. Petitioner has not, and, indeed, cannot, cite to any clearly established federal law, as determined by the United States Supreme Court, see 28 U.S.C. § 2254(d), to support his claim. The United States Supreme Court has held that a trial court must instruct on a lesser offense only where the case involved a capital offense. See Beck v. Alabama, 447 U.S. 625, 638 n.14 (1980). That is not the case here. As such, Petitioner fails to state a cognizable federal claim. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) ("failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding"). This claim is dismissed.

**C**

Finally, Petitioner claims there was insufficient evidence to support his conviction of aggravated sexual assault on a minor. In particular, Petitioner contends that, because the victim was a willing participant, the duress element of the offense was not satisfied.[1]

---

[1] Alternatively, Petitioner asserts that he should have been charged under the current version of the aggravated sexual assault statute (Cal. Pen. Code § 269), and that there is not sufficient evidence to sustain a conviction of that offense. As explained above, however, Petitioner lawfully was charged under the statute in effect at the time the crimes were committed.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. Jackson, 443 U.S. at 324.

Here, the state appellate court applied the standard of review set forth in Jackson and rejected Petitioner's claim, finding that "a rational trier of fact could have found the essential elements of former section 269 beyond a reasonable doubt – i.e., that the oral copulation was aggravated by duress." See Doc. #6, Ex. G at 7.

The court first determined that, in California, "there is sufficient evidence of duress if the totality of the circumstances supports an inference that the victim's participation was coerced in a way that was more threatening than mere psychological pressure, i.e., enticement, urging, or insistence." Doc. #6, Ex. G at 7. Next, the court found that the record contained sufficient evidence of duress:

**11**

> This was 'a typical conservative Asian family,' as [Petitioner's] daughter told the police in a statement received in evidence. [Petitioner] was the authority figure and his daughter was only 12 years old. He escorted her to his bedroom: she told police that 'he had me march' 'step by step.' She confirmed this aspect of events preceding the sexual molestation in her testimony. Once in the bedroom, she told police, [Petitioner] 'made me take off my pants' and 'had me lie down on his bed.' 'I think I was probably scared' when this was occurring, she said; 'I guess [I] kind of felt trapped, 'cause it was my father.' Immediately after this encounter ended 'he told me that it was supposed to be our secret, and not to tell Mom.' Finally, the jury could, in considering the facts, take into account from common knowledge that a 12-year-old girl 'of ordinary susceptibilities' would not wish to be orally copulated by her father and would find the experience disgusting and shameful, and that [Petitioner's] daughter found it to be so given that, being 'kinda depressed' and having 'a tendency just to cry at night' in later years, as she told police, she chose to try to exorcise [sic] the demon by reporting the incident to authorities, making public an experience that she could have put behind her if it had not continued to torment her psychologically.

Id. (citation omitted).

Here, the state appellate court properly applied the **Jackson** standard to the facts of Petitioner's case. Under AEDPA's heightened level of deference, this Court cannot say that the state appellate court's determination that there was sufficient evidence to support the conviction on the aggravated sexual assault charge "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); **Felkner**, 131 S. Ct.

1  at 1307-08; <u>Williams</u>, 529 U.S. at 409; <u>Jackson</u>, 443 U.S. at 324.
2  Petitioner is not entitled to federal habeas relief on this claim.

V

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is DENIED.

Further, a Certificate of Appealability is DENIED.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  <u>See</u> Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk is directed to enter Judgment in favor of Respondent and against Petitioner, terminate any pending motions as moot and close the file.

IT IS SO ORDERED.

DATED   *05/16/2011*                    /s/ Thelton E. Henderson
                                        THELTON E. HENDERSON
                                        United States District Judge

G:\PRO-SE\TEH\HC.09\Viet-09-4175-deny petition-deny coa.wpd